# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60738

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BRENT CLEMONS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 4:10-CR-17-1

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

The district court found Brent Clemons guilty of criminal contempt for appearing at a revocation hearing under the influence of marijuana. Clemons maintains the evidence was not sufficient to show he was under the influence of marijuana. We agree and therefore vacate his conviction.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60738

**I.**

Clemons's saga began in 2011 when he pled guilty to being a felon in possession of a firearm. While he was on supervised release for that offense, he violated three conditions of his release: he (1) was found guilty of an intoxication-related offense; (2) tested positive for marijuana on two occasions; and (3) failed to pay his $1,500 fine.

At a revocation hearing addressing those alleged violations, Clemons's probation officer recommended leniency: one day of detention, covered by credit for time served, and six additional months of supervised release. The government deferred to that recommendation. But the district court was skeptical that leniency was appropriate and probed further into Clemons's behavior on supervised release. The court was especially concerned that Clemons's family, not Clemons himself, had made a partial payment toward his fine. Clemons took the witness stand to answer questions about the source of the payment.

During his testimony, Clemons struggled to answer questions coherently, appeared confused, and mumbled. His attorney urged him to speak clearly and into the microphone. After a few minutes, the district court interjected to ask whether Clemons had a speech defect, and then began questioning him directly.

THE COURT: Are you having some difficulty expressing yourself?

CLEMONS: Like at the moment my mind's kind of blank right now.

THE COURT: And is your mind blank for any legal reason?

CLEMONS: No, sir.

THE COURT: It's blank for an illegal reason?

CLEMONS: No, sir.

2

No. 16-60738

THE COURT:  Are you able to appreciate what's happening here today?

CLEMONS:  Yes, sir.

THE COURT:  Have you had any intoxicants?

THE WITNESS:  No, sir.

THE COURT:  Is there something about this line of questioning which you don't understand and you have some difficulty responding to?

CLEMONS:  Anxieties, trying to—you know, feeling anxious, really.

THE COURT:  I can't understand you.

CLEMONS:  Some anxiety problems, kind of feeling anxious right now.

THE COURT:  What kind of problems?

CLEMONS:  It's for anxiety.

THE COURT:  Anxiety?

CLEMONS:  Yes, sir, I'm just kind of –

THE COURT:  Do you have anxiety problems?

CLEMONS:  Yes, sir.

THE COURT:  Do you take medication for anxiety?

CLEMONS:  Yes, sir.  I've got them with me right now.

THE COURT:  All right.  Take your medication out.

Clemons produced a bottle of pills from his pocket and claimed he had taken the antianxiety medication that morning.  Clemons's probation officer determined the medication was Buspirone, also known as BuSpar, and confirmed that Clemons had been prescribed this medication to treat his anxiety.  The probation officer noted that a common side effect of BuSpar is "a confusional state."

3

No. 16-60738

Concerned that Clemons might be under the influence of an intoxicant, the court recessed so the probation officer could administer a drug test.  The test came back positive for THC, a substance found in marijuana, and positive for "PPX," a designation for prescription medication the probation officer presumed to be BuSpar.  Clemons admitted to his probation officer that he had smoked marijuana approximately one week prior to the hearing.

After the recess, the court recalled Clemons to the stand, but found he was still confused.  The court then continued the hearing to a later date and ultimately sentenced Clemons on the revocation to 10 months in prison to be followed by 26 months of supervised release.  Clemons does not challenge that sentence.

He does appeal the additional action the court took. It ordered the government to file a criminal contempt charge based on Clemons's behavior at the revocation hearing.  At the contempt hearing that followed, the parties agreed that Clemons had struggled to communicate coherently at his revocation hearing, but the only evidence the government presented—testimony from Clemons's probation officer—was that the incoherence could have been caused by marijuana, anxiety, antianxiety medication, or any combination of these factors.  Clemons's probation officer testified that there was no way to tell whether Clemons was under the influence of marijuana on the day of the hearing because the drug test could not show when Clemons ingested marijuana.  Traces of marijuana can remain in a person's urine for up to a month.

The probation officer also testified that Clemons did not smell like marijuana at the revocation hearing and was able to communicate normally during the recess.  Rather than appearing high on marijuana during the recess, the probation officer noted Clemons looked "really stressed out" about court and did not want to eat.

4

No. 16-60738

The district court credited this evidence at the contempt hearing, observing that "it's an open question as to when the presence of marijuana was placed in [Clemons's] system." Nevertheless, the court concluded beyond a reasonable doubt that Clemons "had used marijuana at a time close enough to the hearing where the usage of that marijuana affected his conduct." The court thus found Clemons guilty of criminal contempt and sentenced him to 6 months in prison to be served consecutively to his 10-month revocation sentence.

## II.

A defendant is guilty of criminal contempt under 18 U.S.C. § 401(1) if evidence establishes beyond a reasonable doubt that the defendant: (1) engaged in misbehavior; (2) in or near the presence of the court; (3) with criminal intent; (4) that resulted in an obstruction of the administration of justice. *United States v. Ortlieb*, 274 F.3d 871, 874 (5th Cir. 2001). The district court found the government proved these elements because it concluded that Clemons appeared impaired and under the influence of an illegal drug during his revocation hearing.[1]

Clemons appears to concede that his behavior was disruptive, but he argues the evidence cannot support a finding that marijuana caused his behavior. He asserts the government did not show his behavior was due to anything beyond nervousness and anxiety. That is, he contends the government failed to prove that he was under the influence of any intoxicant at all. Alternately, he argues the government failed to prove his confusion was

---

[1] The government implies Clemons could be guilty of contempt even if he was not under the influence of marijuana, but the contempt charge is limited to Clemons's alleged use of an "illegal drug." So the conviction is limited to that ground. *See United States v. Martinez*, 686 F.2d 334, 345 (5th Cir. 1982). The district court thus relied solely on the alleged marijuana use, and we will not consider the possibility that other behavior could constitute contempt.

5

caused by marijuana and not his legally-prescribed antianxiety medication, which is known to cause a "confusional state" and nervousness.

Our review is highly deferential to reasonable inferences of fact drawn by the trial court. *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993). Witness credibility and the weight of the evidence, for example, are the exclusive province of the trial court. *United States v. Allen*, 587 F.3d 246, 257 (5th Cir. 2009). We may not reverse a verdict merely because we would have weighed the evidence differently. *Id.* Our review is nevertheless guided by reasonableness and the high burden of proof a criminal conviction requires. A verdict "may not rest on mere suspicion, speculation, or conjecture, or an overly attenuated piling of inference on inference." *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (5th Cir. 2006) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)). If the evidence, viewed with all inferences drawn favorably in support of the verdict, is not enough for a rational trier of fact to convict beyond a reasonable doubt, the conviction must be vacated. *Id.* at 334. There is reasonable doubt if the evidence gives equal or nearly equal support to a theory of guilt and a theory of innocence. *United States v. Santillana*, 604 F.3d 192, 195 (5th Cir. 2010).

Even the substantial deference we owe the factfinder is not enough to bridge the chasm between the evidence here—in which the sole witness could not even say it was more likely than not that Clemens was under the influence of marijuana—and the required finding that the court be convinced of that fact beyond a reasonable doubt. In finding Clemens so impaired, the district court relied on Clemens's history of using marijuana, his admission that he had used marijuana a week before the revocation hearing, the drug test that came back positive for THC, and Clemens's behavior during the revocation hearing— namely that he had difficulty understanding and responding to questions, struggled to hold his head up, mumbled, and came to court looking disheveled

and without a belt.  But even considering the cumulative weight of this evidence, it cannot add up to a guilty verdict.

First, Clemons's history of marijuana use has little bearing on whether he was under the influence of marijuana when he took the stand at his revocation hearing.  Indeed, the law recognizes that evidence of past acts is "of slight probative value" when it comes to determining what happened on a particular occasion.  *Jones v. S. Pac. R.R.*, 962 F.2d 447, 449 (5th Cir. 1992); *see generally* FED. R. EVID. 404(b)(1). Clemons's admission that he used marijuana a week prior to the hearing is similarly unhelpful.  It does not demonstrate that Clemons ingested marijuana close enough to the hearing for it to affect his conduct that day.

That Clemons's drug test came back positive for THC the day of the hearing is likewise insufficient to show that he was under the influence of it at the hearing.  The probation officer testified repeatedly that the drug test would have been positive for marijuana whether Clemons consumed it the morning of his hearing or the week prior as he contended.  The government did not offer evidence to the contrary.

That leaves us with Clemons's behavior the day of the revocation hearing.  Our deference to the district court is at its peak here, as we recognize the district court was there, and we were not.  Nevertheless, taking as true everything the district court observed—odd, confused, incoherent behavior, and mumbling, among other things—the evidence does not support the conclusion that the cause of this behavior was marijuana.  Other possibilities are just as (if not more) likely to have caused his behavior.  *See United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011); *United States v. Martinez*, 686 F.2d 334, 346 (5th Cir. 1982) (reversing a criminal contempt conviction when the evidence left open reasonable possibilities other than that defendants had disobeyed a court order).

No. 16-60738

Supporting those other explanations is evidence showing that Clemons is not a normal communicator, "often mumbles," and "doesn't make a lot of eye contact" under ordinary circumstances. And he was particularly "stressed out" about court on the day in question. Further, when asked why he appeared confused, Clemons immediately stated that he was "feeling anxious" and "had anxiety problems." In fact, he had his antianxiety medication on his person and volunteered that he had taken it that morning. The drug test administered at the hearing indicated presence of a prescription medicine, supporting Clemons's statement that he had taken BuSpar. Uncontroverted testimony indicated that nervousness and a "confusional state" were common side effects of this medication, even when taken as prescribed. Importantly, the sole witness at the contempt hearing refused to infer that Clemons's behavior was influenced by marijuana.

Making all reasonable inferences from this evidence in favor of the verdict of guilt, Clemons's behavior is still insufficient to support the conclusion that he was under the influence of marijuana. Neither the district court nor the government has pointed to evidence that would cause a reasonable person to conclude beyond a reasonable doubt that Clemons's behavior was caused by marijuana rather than other, immediately apparent possible causes. For example, the record does not indicate that his eyes were red, a common and visually-identifiable symptom of marijuana use. *See Crider v. United States*, 885 F.2d 294, 295 (5th Cir. 1989) (alluding to red eyes as a symptom of marijuana use). And despite his close proximity to Clemons during the recess in the revocation hearing, the probation officer testified that he did not smell marijuana on Clemons and noted that Clemons declined repeated offers of food. *See Kidd v. Norman*, 651 F.3d 947, 950 (8th Cir. 2011) (noting the connection between marijuana and feeling hungry); *Webster v. Beary*, 228

8

F. App'x 844, 846 (11th Cir. 2007) (alluding to the connection between marijuana and "the munchies").

Most puzzlingly, after hearing all the evidence, the district court recognized what we have just said: that it was "an open question as to when the presence of marijuana was placed in [Clemons's] system." Then, in the span of just one page of the transcript, the court concluded beyond a reasonable doubt that Clemons came to court under the influence of marijuana. We do not see evidence or reason justifying that leap. Affirming the district court's verdict therefore would require us to "strain the trial evidence beyond the limits even our justly deferential review . . . permits." *United States v. Davis*, 735 F.3d 194, 201 (5th Cir. 2013).

**\* \* \***

The judgment is VACATED.